LYON COUNTY BANK MORTGAGE CORPORATION v. TOBIN.
No. 9019.

Circuit Court of Appeals, Ninth Circuit.
June 8, 1939.

Rehearing Denied July 25, 1939.

436

George L. Sanford, of Carson City, Nev., and A. L. Haight, of Fallon, Nev., for appellant.

N. J. Barry, of Reno, Nev., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

This action was brought by appellant, Lyon County Bank Mortgage Corporation, assignee of Lyon County Bank, a Nevada banking corporation (hereafter called Lyon Bank), against appellee, W. J. Tobin, receiver of The Reno National Bank, a national banking association (hereafter called Reno Bank). Alleging that a promissory note of Lyon Bank, held by appellee, had been overpaid by $4,736.90, appellant prayed judgment for that amount and for the return of collateral which had been pledged to secure payment of the note. Answering, appellee denied that the note had been overpaid, alleged that there was still due and owing thereon a balance of $9,316.94, prayed that appellant take nothing by its action, and that appellee have judgment for his costs. Jury trial having been waived, the court tried the case, made and filed its findings of fact and conclusions of law and thereupon entered judgment as prayed by appellee. This appeal followed.

On July 1, 1931, Lyon Bank executed its note in favor of Reno Bank for $60,500, payable on demand, with 8% interest from date until paid. As collateral security, Lyon Bank, on July 22, 1931, pledged certain of its assets, consisting of bonds and other interest-bearing obligations. There were three such pledges, all on the same day. Accompanying each was an agreement executed by Lyon Bank and reading, in part, as follows: "As collateral security for the payment of all of our [Lyon Bank's] present indebtedness to

[Reno Bank] and all of the future indebtedness to said Bank, which we may incur hereafter from any cause or upon any consideration we have assigned, and do hereby assign, deliver and deposit with said Bank the following described property * * * and the said Bank is hereby given authority to sell and deliver the whole or any part of said property, at either public or private sale. * * * At such sale said Bank or any other person or persons may become the purchaser of the whole or any part of said property. After deducting all costs and expenses * * * and the amount of said indebtedness, out of the proceeds of such sale, the surplus, if any, shall be paid to us or our heirs, or assigns. * * *"

Lyon Bank paid interest on its note up to January 1, 1932, but nothing more. On February 16, 1932, Lyon Bank was insolvent. When it became insolvent, the record does not show. The State bank examiner took possession of its property and business[1] on February 16, 1932, and retained such possession until March 29, 1934, at which time all its property and assets were conveyed, assigned and set over to appellant,[2] pursuant to a State court judgment entered October 26, 1933.

On February 16, 1932, when the examiner took possession of Lyon Bank's property and business, there was due and owing on its note to Reno Bank the principal ($60,500), plus interest from January 1, 1932 ($605), a total of $61,105. At that time, however, Lyon Bank had on deposit with Reno Bank $956.36, which Reno Bank credited against the principal of Lyon Bank's note, thus reducing the principal to $59,543.64 and reducing the total amount then due on the note to $60,148.64.

On December 12, 1932, the Comptroller of the Currency, having become satisfied of the insolvency of Reno Bank, appointed appellee as its receiver. 12 U.S.C.A. § 191. Appellee qualified and, under the direction of the Comptroller, took possession of the books, records and assets of Reno Bank and proceeded, as required by law, to "collect all debts, dues, and claims belonging to it." Id., § 192.

Between February 16, 1932, and October 21, 1936, Reno Bank and its receiver (appellee) collected and applied in payment of Lyon Bank's note sums aggregating $64,885.54.[3] Between October 31, 1936, and April 2, 1937 (when this action was commenced), nothing appears to have been collected. While the action was pending in the District Court, appellee collected and applied on the note sums aggregating $1,968.05.[4] Thus, from and after February 16, 1932, payments on the note aggregated $66,853.59, all of which was derived from the above mentioned collateral. Part of it was interest on such collateral, part of it was principal or proceeds of sales thereof. How much was interest and how much was principal or proceeds, is not clear[5] nor, in our opinion, material.

Appellant does not challenge the validity of Lyon Bank's note or of the pledges securing it. Appellant concedes that Reno Bank and appellee, as its receiver, could lawfully apply the proceeds and avails of the pledged collateral to the payment of the principal ($59,543.64) and accrued interest ($605) which were due and owing on the note when the examiner took possession of Lyon Bank's property and business on February 16, 1932. Appellant's contention is that no part of the pledged collateral or of the proceeds or avails thereof could lawfully be applied to the payment of interest accruing on the note after February 16, 1932.

There is no merit in appellant's contention. The pledges were made expressly to secure all indebtedness of Lyon Bank to Reno Bank. This indebtedness included interest as well as principal. It included interest accruing after February 16, 1932, as well as that accruing previously. The security thus provided was not, as to subsequently accruing interest or otherwise, diminished or impaired by Lyon Bank's insolvency or by the action of the examiner in taking possession of its property and business. Ticonic National Bank v. Spra-

---

[1] Nevada Bank Act of 1911, § 53, Comp. Laws, § 702.

[2] Nevada Bank Act of 1933 (Stats. 1933, c. 190), § 70.

[3] Exclusive of the deposit ($956.36) previously mentioned.

[4] Appellee collected during this period $873.05 from H. E. Carter and $1,095 from E. S. Wedertz—a total of $1,968.05. The finding that $1,625.99 was collected from Carter was in error.

[5] One finding states that the total amount collected as interest was $2,930.75. Other findings state that $14,658.84 was so collected.

gue, 303 U.S. 406, 411, 58 S.Ct. 612, 82 L. Ed. 926.

Appellant cites, as supporting its contention, § 35 of the Nevada Bank Act of 1911, Comp.Laws, § 684, which, as amended March 2, 1931 (Stats.1931, c. 35, § 1), provides: "No bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or otherwise; *provided, however,* * * * that any bank may borrow money for temporary purposes, not to exceed the amount of its paid-up capital, and may pledge any of its assets as collateral security therefor. * * *"

■ Since the pledges here involved are conceded to be valid, we must assume that they come within the proviso, not the prohibition, of § 35. Section 35 does not deal with interest. Much less does it draw a distinction between interest accruing before and interest accruing after the examiner takes possession of a bank's property and business. It therefore does not support appellant's contention.

Appellant quotes from § 53 of the Nevada Bank Act of 1911, Comp.Laws, § 702, the following provision: "No bank, corporation, firm or individual knowing of such taking possession [of a bank's property and business] by the examiner, shall have a lien or charge for any payment, advance or clearance thereafter made, or liability thereafter incurred against any of the assets of the bank of whose property and business the examiner shall have taken possession. * * *"

■ Lyon Bank's liability, evidenced by its note, was for the payment of interest as well as principal—for the payment of interest accruing after the examiner took possession of its property and business as well as that accruing previously. The liability was incurred long before the examin-er took possession. No part of it was incurred thereafter. Hence, the quoted provision of § 53 does not apply.

■ Section 72 of the Nevada Bank Act of 1911, Comp.Laws, § 721, cited by appellant, does not deal with pledges or with interest and, therefore, has no bearing on the question we are considering. The question was not involved, decided, considered or discussed in any of the Nevada cases cited in the briefs.[6] There is, apparently, no pertinent Nevada decision. Lacking such, we apply the rule of Ticonic National Bank v. Sprague, supra.

■ An alternative contention of appellant is that interest accruing on Lyon Bank's note after February 16, 1932, was not payable from the principal or proceeds of the pledged collateral, but only from interest thereon. In support of this contention, appellant cites Gamble v. Wimberly, 4 Cir., 44 F.2d 329, decided October 21, 1930. Gamble v. Wimberly was overruled by Ticonic National Bank v. Sprague, supra, March 7, 1938. Under the Ticonic decision, pledged collateral and all proceeds and avails thereof—principal and interest —may be applied in payment of the pledgor's debt, including interest accruing after the pledgor's insolvency.

The total amount due on Lyon Bank's note on February 16, 1932, plus interest subsequently accruing thereon, exceeded the total amount collected by Reno Bank and appellee. This is true even though all sums collected were, or may be deemed to have been, applied to the payment of principal until all principal was paid. Therefore, we need not consider appellant's contention that certain payments which appellee treated as payments of interest should have been treated as payments of principal.

Judgment affirmed.

6 State ex rel. Ash v. Parkinson, 5 Nev. 15; State ex rel. Parkes v. Wildes, 37 Nev. 55, 139 P. 505, 142 P. 627; Gill v. Paysee, 48 Nev. 12, 226 P. 302; Tonopah Sewer & Drainage Co. v. Nye County, 50 Nev. 173, 254 P. 696; Organ v. Winnemucca State Bank & Trust Co., 55 Nev. 72, 26 P.2d 237; Lyon County Bank v. Lyon County Bank, 57 Nev. 41, 58 P.2d 803, 60 P.2d 610; Dellamonica v. Lyon County Bank Mortgage Corp., Nev., 78 P.2d 89; Crystal Bay Corp. v. Schmitt, Nev., 81 P.2d 1070; Id., Nev., 83 P.2d 464.